UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**JEROME B.,**

    **Plaintiff,**

    v.                                            Civ. No. 24-1065 GJF

**FRANK J. BISIGNANO, Commissioner
Of the Social Security Administration,[1]**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the applications for Disability Insurance Benefits and Supplemental Security Income filed by Plaintiff Jerome B. Pursuant to the Parties' consent, [Dkt. No. 21], the case was assigned to the undersigned Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. After reviewing *Plaintiff's Memorandum of Law in Support of Reversing or Remanding an Administrative Agency Decision* [Doc. 12], Defendant's response [Doc. 16], Plaintiff's reply [Doc. 19], the Administrative Record ("AR") [Doc. 9 and attachments thereto], and applicable case law, this Court AFFRIMS the Commissioner's decision.

---

[1] Frank J. Bisignano was sworn in as Commissioner of the Social Security Administration on May 7, 2025; thus, pursuant to Federal Rule of Civil Procedure 25(d), he is "automatically substituted as a party."

**I.    BACKGROUND**

Plaintiff is a male in his early fifties with a high school education. On January 12, 2022, Plaintiff filed his applications for both Supplemental Security Income and Disability Insurance Benefits. He alleged that he became disabled beginning September 1, 2017, as a result of vision problems, a cardiac condition, high blood pressure, anxiety, depression and acid reflux. AR 220, 222. The agency denied his claims initially, AR 54-75, and after reconsideration. AR 76-96. Plaintiff requested a hearing with an administrative law judge ("ALJ"). AR 136-38. On February 21, 2024, the ALJ held a telephonic hearing on Plaintiff's claims, AR 33-52. At the hearing, Plaintiff testified that he is unable to work due to a combination of physical impairments that limited his ability to lift, carry, sit, stand, and walk; visual impairments that left him unable to drive; and cardiac problems that limited his ability to tolerate heat and activity. AR 19. On April 4, 2024, the ALJ issued his written decision denying benefits. AR 11-32. The Appeals Council declined review. AR 1-6. Plaintiff then filed his Complaint [Dkt. No. 1] in this Court, which has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.   STANDARD OF REVIEW**

   **A. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). At the first step, the claimant must show that he is not "presently engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b) and 416.920(b). If so, at step two the claimant

must demonstrate that he has a medically severe impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c) and 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. If the claimant satisfies step two, then at step three the ALJ must determine whether the impairment or combination of impairments is severe enough to both satisfy the criteria of a listed impairment and meets the duration requirement. If the claimant satisfies this step, he is disabled. If not, then the analysis proceeds to the fourth step.

Before considering step four, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e) and 416.920(e).

At step four, the claimant must show that "the impairment or combination of impairments prevents him from performing his past work." *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If he is unable to do any past relevant work or does not have any such work, the analysis proceeds to the fifth step.

As previously noted, the claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 750-51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5. To support a finding that an individual is not disabled at this step, the Social Security Administration must show that other work exists in significant numbers in the national economy that the claimant can do in light of his RFC, age, education, and work experience. If the claimant is able to do other work, he is not disabled.

### B. Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported his findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases[.]" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so[.]" *Hamlin*, 365 F.3d at 1214.

The Commissioner's factual findings, on the other hand, are presumed conclusive so long as substantial evidence supports them. 42 U.S.C. § 405(g). Under this standard, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* at 103 (quotation omitted). On the other hand, substantial evidence is less than a preponderance. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek*, 587 U.S. at 97, 103 (quotation omitted).

Under this substantial evidence standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

### III.     ALJ'S DECISION AND FINDINGS

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act and that he has not been engaged in substantial gainful activity since the alleged onset date of September 1, 2017. AR 16-17. At step two, the ALJ found that Plaintiff has seven severe impairments: obesity, peripheral vascular disease, low vision, hypertension, post-heart attack syndrome, hypothyroidism, and major depressive disorder. AR 17.

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 FFR Part 404, Subpart P, Appendix 1. AR 17-18. He considered Listings 2.02 (loss of central vision acuity) and 2.04 (visual impairment or loss of visual efficiency) and concluded that Plaintiff's symptoms did not rise to the level required by those listings. AR 17. With regard to Listing 4.12 (peripheral arterial disease), the ALJ noted that Plaintiff's condition had been

surgically repaired, and his recent physical examinations were mostly unremarkable such that the medical evidence did not establish the criteria required for that listing. *Id*. As to all three listings, the ALJ found no medical source that mentioned findings equivalent in severity to the criteria of the listings, either individually or in combination. *Id*.

With regard to mental impairment, the ALJ considered listing 12.04 (depressive, bipolar, and related disorders) in light of both "Paragraph B" and "Paragraph C" criteria. AR 17-18. Under Paragraph B, a claimant must show that the mental impairment results in one extreme limitation or two marked limitations in a broad area of functioning. He found that Plaintiff has a moderate limitation in "understanding, remembering or applying information and interacting with others," as well as a mild limitation in "concentrating, persisting or maintaining pace and adapting or managing oneself." The ALJ found no impairment stemming from Plaintiff's diagnoses of depression and anxiety, and he observed that medical records often noted that Plaintiff was cooperative with normal memory. AR 18. Thus, the ALJ concluded that the Paragraph B criteria were not satisfied. The ALJ also determined that Plaintiff did not satisfy the Paragraph C criteria for Listing 12.04. AR 18. Under Paragraph C, a claimant must show that the impairment is "serious and persistent" over a period of at least two years. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B)-(C). The ALJ concluded that the evidence "fails to establish the presence of a serious and persistent condition with a medically documented history over a period of at least two years," as well as no evidence of ongoing treatment or an inability to adapt to changes in environment. AR 18. Thus, the ALJ found that Plaintiff did not carry his burden at step three.

Next, the ALJ turned to Plaintiff's RFC determination, finding that Plaintiff can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with certain limitations on lifting, carrying, climbing, sitting, standing, stooping, crouching; restriction from working at

unprotected heights, or with hazardous machinery; no commercial driving; and avoiding concentrated exposure to heat and humidity. AR 18. The ALJ also stated, "the claimant can understand, remember, and carry out simple instructions and interact occasionally with the public." Id. To make that determination, the ALJ summarized the medical records in evidence and concluded that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence. AR 19.

At step four, the ALJ found that Plaintiff does not have the RFC to perform any relevant past work, which included work as a truck driver and heavy equipment operator. Finally, at step five the ALJ found that there are some jobs within the category of unskilled light work in the national economy that Plaintiff can perform in light of his age, education, work experience, and RFC. AR 26. Examples of these occupations are office helper, housekeeping cleaner, and marker. AR 27. The ALJ concluded that Plaintiff is not disabled as that term is defined in the Social Security Act and therefore is not entitled to benefits. *Id*.

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff makes two arguments for reversal and remand. First, he contends that the ALJ's determination of his RFC is not supported by substantial evidence because the ALJ failed to explain how he reconciled his findings regarding Plaintiff's mental limitations at steps two and three of the sequential evaluation process with the less restrictive mental limitations he assessed when determining Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ erred because, while he addressed Plaintiff's moderate limitations, he failed to incorporate the mild mental limitations he found in step three into the RFC finding or to explain why he did not do so.

Second, Plaintiff asserts that the ALJ failed to properly consider or adequately explain his rejection of the restrictions imposed by Nurse Practitioner ("NP") Mois Johnson, who performed a consultative psychological evaluation of Plaintiff.

## V.   DISCUSSION

### A.   The ALJ's Residual Functional Capacity Determination Was Proper and Supported by Substantial Evidence

Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). As Plaintiff correctly notes, in evaluating the severity of mental impairments at steps two and three of the sequential evaluation process, the regulations provide for rating the degree of functional limitation in each of four broad mental functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ may rate the claimant's impairment in each of these functional areas as none, mild, moderate, marked, or extreme. Here, at step three the ALJ found that Plaintiff has a moderate limitation in the first two areas: understanding, remembering or applying information as well as in interacting with others. He found that Plaintiff has a mild limitation in the last two areas: concentrating, persisting or maintaining pace and adapting or managing oneself. Despite these findings, when the ALJ made his determination as to Plaintiff's RFC, the only mental restriction he noted was that "the claimant can understand, remember, and carry out simple instructions and interact occasionally with the public." Plaintiff argues that by not accommodating both the mild and moderate mental restrictions found at step three when evaluating his RFC—and by failing to explain why—the ALJ committed error. *See* Dkt. No. 12 at 9-10.

For his part, the Commissioner responds that the ALJ's RFC determination should be upheld because it is supported by substantial evidence. The Commissioner points out that with respect to mental impairment, the ALJ considered administrative medical findings from two state agency psychological consultants and two consultative examiners, and that he found that Plaintiff's impairments would cause more restrictions than were found by the state agency psychological consultants. The ALJ also discussed his conclusion that greater mental restrictions were not warranted because the medical record showed that Plaintiff's primary care doctor and other providers regularly made normal mental status examination findings, Plaintiff did not complain of psychological issues, Plaintiff's primary care doctor treated his depression with Wellbutrin, and Plaintiff did not attend counseling. Providers also found Plaintiff to be cooperative and to have normal mood, affect, memory, judgment, and insight. Accordingly, the Commissioner asserts that the ALJ's finding that Plaintiff was restricted to simple instructions and occasional public contact but required no additional restrictions was supported by substantial evidence. The Commissioner contends that the ALJ sufficiently discussed the evidence and explained how he came to his conclusions as to Plaintiff's workplace restrictions but was not required to specifically discuss why the mild limitations he found at step 3 did not warrant additional restrictions.

At the outset, the Court notes that a finding of mild mental limitations does not require the ALJ to include mental functioning restrictions in the RFC. *See, e.g., Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). In *Beasley*, the court concluded that the ALJ "was under no obligation to include limitations in [the claimant's] social functioning" in the RFC "based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis," *id*., and declined to issue a ruling "requiring an ALJ's RFC assessment to mirror his step three-findings." *Id*. at n.3.

This principle does not create a categorical rule, however, that an ALJ need not take step-three limitations into account when determining a claimant's RFC. While "the ALJ's description of the mental limitations at steps two and three is not an RFC assessment...that does not mean that an ALJ may stop there." *Willie v. Saul*, No. 19-cv-00329 SMV, 2020 WL 2065286, at *4 (D.N.M. Apr. 29, 2020) (citation omitted). Rather, most courts agree that having assessed certain *moderate* mental limitations at steps two and three, the ALJ is "required either to include corresponding limitations in the RFC assessment or to explain the omission." *Id*.

Plaintiff cites many cases from within the Tenth Circuit that support that point with respect to a finding of moderate or marked limitations at steps two and three. *See, e.g., Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014) (finding the ALJ erred when he found moderate and marked limitations at steps two and three, but only discussed a few of those in making the RFC determination); *D.G. v. Kijakazi*, No. 21-CV-01655-NYW, 2022 WL 2666033 at *8 (D. Colo. July 11, 2022) (unpublished) (finding that while the ALJ is not obligated to incorporate moderate limitations he found at step three into the RFC, he must explain his decision not to do so); *Miranda v. Barnhart*, 205 F. App'x 638, 643 (10th Cir. 2005) ("Given that he found moderate difficulties in the areas of concentration, persistence, or pace, the ALJ erred in not further addressing these factors in assessing [the claimant's] RFC.") (footnote omitted).

But the cases Plaintiff cites do not address whether the ALJ must directly discuss *mild* impairments in his RFC determination if he chooses not to incorporate them into his findings. The Commissioner cites cases in which courts have concluded that the ALJ has some latitude in the manner in which he discusses mild impairments at the RFC stage. For example, in *Maria R. v. Dudek*, Civ. No. 24-74 GBW, 2025 WL 864258 at *3 (D.N.M. Mar. 19, 2025) (unpublished), the plaintiff argued that the ALJ erred by failing to adequately consider and incorporate her mild

10

mental limitations into the RFC assessment. The court disagreed, noting that the ALJ "properly considered the evidence regarding Plaintiff's mild mental limitations because she adequately discussed Plaintiff's impairments at step two and explained their impact at step four in her RFC assessment." *Id*. at *4. This included a thorough discussion of plaintiff's mental impairments and the evidence supporting them at step two, as well as an RFC determination that she stated took into consideration the entire record. *Id*. The ALJ also discussed the persuasiveness of some of the evidence on mental impairments, leading the court to conclude that the ALJ's discussion "was a mental RFC assessment separate from the non-severity determination made at step two." *Id.* In sum, the *Maria R.* court upheld the ALJ because it found she did not improperly rely upon her step two findings to substitute for her step four analysis; her dismissal of the plaintiff's mental health symptoms demonstrated that she fully considered them in the RFC determination; and that while she could have tied the two together more explicitly, she properly considered the entire record and all of Plaintiff's symptoms. *Id*. The court found no requirement for the ALJ to include a specific discussion of her decision to omit plaintiff's mild impairments from the RFC.

In *C.C. v. O'Malley*, No. 24-cv-00055-MDB, 2025 WL 942992, at *1 (D. Colo. Mar. 26, 2025), the ALJ found that the plaintiff had certain severe physical impairments but that his attention deficit hyperactivity disorder ("ADHD") was not a severe impairment, noting plaintiff's normal mental status exams and his ability to do household chores and routine tasks. *Id*. The ALJ did find a mild limitation in the ability to concentrate, persist, or maintain pace. *Id*. In formulating the RFC, however, the ALJ declined to include restrictions based upon plaintiff's ADHD. *Id*. at *2. Like the Plaintiff in this case, the plaintiff in *C.C.* argued that the ALJ was duty-bound to either include the mild impairment in the RFC determination or explain why he failed to do so. *Id*. at *3. The court noted that although the ALJ did not specifically discuss the mild limitation in ability to

concentrate, persist, and maintain pace, the RFC analysis included an assessment of the state agency consultant's opinion. In that discussion, the ALJ noted that the consultant's opinion that plaintiff did not have a severe mental impairment was persuasive and consistent with the evidence. *Id*. at \*4. The ALJ also noted that the plaintiff had not followed through with treatment for his ADHD, had normal mental status exams, and maintained the ability to do household chores and similar tasks. *Id*. The court stated that the ALJ had conducted a sufficient review of Plaintiff's mental impairments at step two, and then expressly asserted that his step two review was not a replacement for an RFC analysis. *Id*. at \*5. In his RFC discussion, the ALJ also considered an expert opinion regarding plaintiff's ADHD and the lack of evidence to show that it impacted his daily functions. *Id.* Based on the foregoing, the *C.C.* court concluded that "[t]he ALJ provided sufficient analysis in step two and in his RFC discussion for the Court to follow his reasoning and understand the basis for his conclusion that Plaintiff's ADHD did not justify a lower RFC. Thus, the Court finds no reversible error." *Id*.

In reaching its conclusion, the *C.C.* court noted that "[t]here is a range of conflicting decisions [in the District of Colorado and the Tenth Circuit] regarding the level of detail required when an ALJ engages in his or her RFC analysis." *Id*. at \*4. For example, it cited *Suttles v. Colvin*, 543 Fed. App'x 824 (10th Cir. Oct. 31, 2013), in which the ALJ's discussion of non-severe mental impairments in his RFC formulation was somewhat brief. 543 F. App'x 824. In *Suttles*, the ALJ explicitly noted that his discussion of the claimant's non-severe depression finding of mild limitations in mental functioning in step two did not replace a "distinct mental RFC assessment" at step four. *Id*. at 826. As a result, the Tenth Circuit was satisfied that he had not conflated the two analyses. But at step four the ALJ only vaguely "discussed evidence relating to depression," and "pointedly omitted any limitation associated with that mental impairment on the RFC." *Id*.

The *Suttles* court noted the ALJ had "could have been more explicit in tying" the claimant's mental limitations to the RFC itself, but ultimately it upheld the ALJ's decision choosing to be guided by "common sense, not technical perfection." *Id.*

*Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016), is similar. There, the Tenth Circuit held that where an ALJ discussed a non-severe physical impairment in detail at step two and recognized the obligation to consider all severe and non-severe impairments at step four, the ALJ did not improperly rely on a step two analysis as a replacement for an RFC inquiry. *Bradley*, 643 F. App'x 674. The Tenth Circuit stated, "[b]ecause the record shows the ALJ considered Bradley's hand impairments in determining his RFC, the ALJ's failure to specifically discuss them at the fourth step does not require reversal." *Id.* at 676; *see also Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) ("[W]hen an 'ALJ indicates she has considered all the evidence, [the Court's] practice is to take the ALJ at her word.'") (quoting *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)).

The Court finds the reasoning of the foregoing cases to be persuasive. Here, the ALJ acknowledged that the limitations he identified in the "paragraph B" criteria are not an RFC assessment but rather a separate framework to rate the severity of mental impairments at steps two and three. AR 18. The ALJ also noted that the RFC assessment required a more detailed examination of mental functioning. Id. Finally, the ALJ stated that in making his RFC finding, he considered all symptoms and the extent to which those symptoms could be accepted as consistent with the objective medical evidence. AR 18. Therefore, as a threshold matter, the Court is satisfied that the ALJ did not conflate the two analyses and that he considered all the evidence before him.

Next, the Court is satisfied with the ALJ's discussion of the evidence on mental impairments. He discussed in some detail the records from all of Plaintiff's medical providers,

13

including his primary care doctor, ophthalmologist, cardiologist, cardiothoracic surgeon, ER doctor, and psychological consultative examiners Dr. Mario DiBiase and Mois Johnson. AR 19-24. He also discussed the opinion evidence submitted by the State agency medical consultants at the initial and reconsideration levels. AR 24. The ALJ was not persuaded by the latter, as they did not examine Plaintiff and they failed to fully consider the impact of Plaintiff's severe impairments on his physical and mental functioning—to wit, three surgeries to address his aortic dissection, his depression, and his anxiety. Accordingly, the ALJ concluded that the RFC required *greater* mental restrictions than were recommended by the State agency medical consultants. AR 24. The ALJ was persuaded by Dr. DiBiase's opinion, noting that Plaintiff consistently showed symptoms of "depression, irritability, and social isolation, but never underwent formal treatment and was simply prescribed medication by his primary care provider." AR 25. However, Plaintiff's "mental status examinations were mostly normal, he frequently denied any psychiatric symptoms, and he occasionally reported improvement with medication." Id. The ALJ noted that Plaintiff has a history of depression for which he takes Wellbutrin prescribed by his primary care doctor but for which he does not attend counseling. AR 20, 25. And finally, the ALJ explained his rejection of Mois Johnson's recommendation for greater restrictions because her opinions relied upon Plaintiff's subjective complaints and not the treatment records, which he concluded do not support additional mental restrictions beyond those he already included. AR 25.

     The Court concludes that the ALJ conducted a thorough RFC analysis of all the evidence regarding Plaintiff's mental functioning and committed no error. It is true that the ALJ's RFC discussion does not specifically mention Plaintiff's mild impairments in concentrating, persisting or maintaining pace and adapting or managing oneself. As the foregoing cases explain, however, the ALJ is not required to explicitly "connect the dots" between mild "Paragraph B" impairments

and the RFC determination in this manner, only that he consider and apply all the evidence before him on mental impairment. Because the ALJ met this standard, the Court will uphold his decision.

### B. The ALJ Properly Explained Why He Was Not Persuaded by Nurse Johnson's Opinion

#### 1. Nurse Johnson's Report

After Plaintiff filed his claim for benefits, Mois Johnson, a certified nurse practitioner, conducted a consultative psychological examination of Plaintiff. AR 1654-1662. In her report, NP Johnson noted Plaintiff's past record of diagnosis of major depressive disorder, AR 1657 and 1660, and current treatment with an antidepressant, buproprion. AR 1656. She stated that Plaintiff reported a history of schizophrenia, AR 1656, and paranoia. AR 1658. NP Johnson also observed that Plaintiff's mood was agitated, AR 1658, and that he appeared frustrated and impatient when interacting with her. AR 1657. Ms. Johnson diagnosed Plaintiff with major depressive disorder and severe paranoia disorder. AR 1660. She then noted that Plaintiff's mental ability to "understand, retain, and follow instructions" and to "sustain attention to perform simple, repetitive tasks" was "Fair." She assessed Plaintiff's mental ability to "relate to others, including fellow workers and supervisor" and to "tolerate the stress/pressures associated with day-to-day work activity" as "Poor." AR 1661. In support of these conclusions, Ms. Johnson cited various symptoms described to her by Plaintiff: "memory loss, fear of people, staying locked in room, feelings of worthless, sadness, avoidance, depth perception is very off . . . vision issues, unable to communicated with people effectively . . ." AR 1655, 1661. She also opined that Plaintiff was not capable of managing his own funds due to poor eyesight. AR 1661.

### 2. The ALJ's Analysis

The ALJ's discussion of NP Johnson's opinion consists of a single paragraph. He found that the "opinion evidence submitted by Ms. Johnson was not persuasive." AR 25. In support of that conclusion, the ALJ noted that NP Johnson examined Plaintiff only once, that her opinions relied upon Plaintiff's subjective complaints, and that she failed to consider his prior treatment records that showed only diagnoses of depression and anxiety that were treated with one medication and no counseling. *Id*. The ALJ also stated that the limitations NP Johnson suggested were not consistent with Plaintiff's prior treatment records, which showed that he had been diagnosed with depression and anxiety that had been treated with one medication and no counseling. *Id*. (citing records). He also noted that Plaintiff had denied to past medical providers that he was experiencing any psychiatric symptoms and had normal status examinations. *Id*. (citing records). Thus, the ALJ concluded that the limitations to Plaintiff's functional capacity prescribed by NP Johnson were not warranted in light of the totality of the evidence. *Id*.

### 3. Legal Standard

The parties agree that in evaluating the persuasiveness of medical opinions, an ALJ must consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Of these, the regulations require the ALJ to discuss only supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). The ALJ need only provide information to allow the court to "trace the path of the adjudicator's reasoning." *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650 at *2 (10th Cir. Oct. 28, 2022).

Judicial review is limited to the reasons stated in the ALJ's decision. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

    4.    <u>Discussion</u>

Plaintiff asserts that the ALJ erred for several reasons. Plaintiff contends that the ALJ's decision finding NP Johnson's opinion unpersuasive fails to comply with 20 C.F.R. § 404.1520c(b)(2) and 416.920c(b)(2) because he did not adequately explain his reasoning on the "supportability" and "consistency" factors. Doc. 12 at 14-18.

First, with regard to the "supportability" factor, Plaintiff argues that it was not reasonable for the ALJ to criticize NP Johnson's opinion because it was based on a single examination of Plaintiff. He asserts that "this is true of every psychological evaluation ordered at the request of the agency." Dkt. No. 12 at 15. In response to the ALJ's statement that NP Johnson relied upon Plaintiff's subjective complaints, Plaintiff points out that Ms. Johnson did not merely repeat Plaintiff's symptoms without analysis but rather stated that her impressions were based on the clinical interview and the records which she reviewed. *Id*. *See also* AR 1655.

The Court disagrees with Plaintiff and concludes that the ALJ adequately discussed supportability. Although Plaintiff may be correct that opinions from consultative examiners are typically based on only a single examination, that does not mean that an ALJ is required to give a consultative examiner's opinion the same or greater weight as opinions and data garnered over multiple examinations or medical visits. In this case, there was a documented mental health history that was not consistent with NP Johnson's findings. The ALJ was entitled to discount NP Johnson's opinion in light of the fact that it was one data point over a period of many other visits with healthcare providers. Nor did the ALJ err by pointing out that NP Johnson's opinion relied largely on Plaintiff's subjective complaints. As the Commissioner correctly noted, "a subjective

complaint from the patient is not medical evidence." *See Lopez v. Astrue*, 807 F. Supp. 2d 750, 764 (N.D. Ill. 2011) ("[A] doctor's notation of a claimed symptom or subjective complaint from the patient is not medical evidence. It is 'the opposite of medical evidence.'") (quoting *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010))

Second, Plaintiff argues that the ALJ did not adequately support his decision on the "consistency" factor. Dkt. No. 12 at 15-17. Plaintiff contends that the restrictions recommended by NP Johnson "strongly correlate[]" with the findings of Dr. DiBiase, Doc. 12 at 15, who performed a psychological consultative examination of Plaintiff in December of 2019—about two and a half years before NP Johnson. *See* AR 657-663. He then cites to portions of Dr. DiBiase's opinion that he contends are consistent with NP Johnson's opinion, Dkt. No. 12 at 16, and asserts that the ALJ failed to adequately explain his reasoning on the consistency factor. Plaintiff contends that the ALJ improperly relied on a few normal findings in the treatment record while failing to discuss the consistency between Dr. DiBiase's report and the restrictions imposed by NP Johnson. Dkt. No. 19 at 5. Plaintiff also argues that the ALJ cherry picked normal findings from the treatment records while failing to discuss primary care mental health treatment records that support NP Johnson's opinion. *Id*. at 17.

As an initial matter, the ALJ did not violate the regulations by not discussing how the opinions of Dr. DiBiase and NP Johnson were or were not consistent. The text of 20 C.F.R. § 416.920c, which governs the evaluation of medical opinions, provides the agency "will explain how we considered the ... consistency facto[r]," § 416.920c(b)(2), "but it does not appear to more specifically require an explanation of whether any one source's opinion was consistent with that of another individual source." *Harrison v. Comm'r, SSA*, No. 22-4108, 2024 WL1856553 at *4 (10th Cir. Apr. 29, 2024) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The

18

record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.")).

As for Dr. DiBiase's opinion, Plaintiff asserts that the ALJ failed to consider that it "strongly correlates" with NP Johnson's opinion. Having reviewed both reports, the Court considers that statement to be an overreach. Both opinions discuss Plaintiff's symptoms of depression and irritability, as well as his physical history. Beyond that, they are very different. While Dr. DiBiase diagnosed major depressive disorder and opined that Plaintiff could follow simple instructions and had adequate ability to get along with others and to manage his own finances, AR 661-662, NP Johnson diagnosed major depressive disorder and severe paranoia disorder. Plaintiff reported very different symptoms to NP Johnson, such as "memory loss, fear of people." AR 1660. NP Johnson opined that Plaintiff's ability to relate to others and to tolerate the stress associated with day-to-day work activities was poor and that he is unable to manage his own finances. AR 1661. In short, to the extent NP Johnson diagnosed depression, Dr. DiBiase's opinion is consistent. However, Dr. DiBiase's opinion is not consistent with the severe paranoia diagnosis nor the greater restrictions she recommended.

Plaintiff's "cherry picking" argument fares no better. The Court notes that Plaintiff has failed to point to any specific mental health treatment records supporting NP Johnson's opinion that the ALJ should have included in his analysis. Plaintiff accuses the ALJ of cherry picking, but Plaintiff himself fails to point to any contrary evidence that the ALJ may have overlooked. It is not the Court's duty to undertake an analysis of all of Plaintiff's treatment records on his behalf.

Based on the foregoing, the Court concludes that the ALJ adequately articulated his reasoning for finding NP Johnson's opinion unpersuasive, and his reasoning is supported by substantial evidence.

**IT IS THEREFORE ORDERED** that *Plaintiff's Memorandum of Law in Support of Reversing or Remanding an Administrative Agency Decision* [Doc. 12] is **DENIED**.

**IT IS FURTHER ORDERED** that the administrative law judge's final decision is **AFFIRMED** and this case is **DISMISSED**.

_____
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**